## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**SCOTT V. ANDERSON,**

**Plaintiff,**

v.                                                              **CASE NO. 23-3230-JWL**

**KANSAS DEPARTMENT OF**
**CORRECTIONS, ET AL.,**

**Defendants.**

## MEMORANDUM AND ORDER

Plaintiff and state prisoner Scott V. Anderson, who is housed at Winfield Correctional Facility in Winfield, Kansas, filed this pro se civil action pursuant to 42 U.S.C. § 1983 based on events that occurred while he was housed at El Dorado Correctional Facility (EDCF). It comes now before the Court on Plaintiff's motion for leave to file a second amended complaint (Doc. 20); the *Martinez* report and exhibits filed by Interested Party the Kansas Department of Corrections (KDOC), and Plaintiff's response to the *Martinez* report. (Docs. 17, 20, and 21.)  For the reasons explained below, the Court will direct the clerk to file the proposed second amended complaint as the operative complaint in this matter.

Plaintiff will be granted time in which to show cause, in writing, why this matter should not be dismissed for failure to state a plausible claim on which relief can be granted. In the alternative, Plaintiff may file a complete and proper third amended complaint that states a plausible claim for relief. When the Court receives Plaintiff's response or third amended complaint, it will issue further orders as necessary. If Plaintiff fails to timely file a response and/or third amended complaint, this matter will be dismissed without further prior notice to Plaintiff.

## I.      Nature of the Matter before the Court

Plaintiff began this pro se civil rights action by filing his complaint on October 15, 2023. (Doc. 1.) As required by statute, the Court screened the complaint and, on October 18, 2023, issued a memorandum and order (M&O) explaining the deficiencies in the complaint that left it subject to dismissal in its entirety. (Doc. 4.) The Court granted Plaintiff time in which to file a complete and proper amended complaint curing the deficiencies. *Id.* at 1. Plaintiff promptly filed his amended complaint. (Doc. 6.)

After receiving the amended complaint, the Court issued a second M&O in which it summarized the amended complaint and concluded that the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate KDOC officials. (Doc. 7, p. 1-3.)  The second M&O thus directed that the KDOC be added to the docket as an interested party and ordered the KDOC to submit a *Martinez* report, after which the Court would resume screening of the amended complaint. *Id.* at 2-3. The KDOC filed the *Martinez* report on May 3, 2024. (Doc. 16.) On May 30, 2024, Plaintiff filed a motion for leave to file a second amended complaint (Doc. 20) and his response to the *Martinez* report (Doc. 21). The Court first will address the motion for leave to file a second amended complaint.

## II.      Motion for Leave to File Second Amended Complaint (Doc. 20)

Plaintiff seeks permission to amend his complaint to identify "the correct and responsible defendants" in response to "[t]he Defendant's request for summary judgment." (Doc. 20, p. 1.) Based on this statement, the Court clarifies for Plaintiff that no Defendant in this matter has yet been served. Although the named Defendants in this case work for the KDOC in varying capacities, the KDOC as an entity is not a defendant. Rather, the KDOC was added to this case by the Court as an "interested party" so that it would file the *Martinez* report required for the Court

to conduct the statutorily required screening. (*See* Doc. 7, p. 4.) Once the KDOC submitted the report, its role in these proceedings was complete, as reflected by the Court's previous instruction that "[u]pon the filing of that report, the KDOC may move for termination from this action." *Id.*

Plaintiff further is assured that the *Martinez* report is not considered as a motion for summary judgment or a motion of any kind. It is merely an aid for this Court to ascertain the facts and circumstances underlying the subject matter of the complaint. *See Gee v . Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987) ("The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims."); *Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978) (""[T]he state prison administration, at a level where the facts can be adequately developed, first examines and considers the incident, circumstances, and conditions which gave rise to the asserted cause of action and develops a record before the court must proceed beyond the preliminary stages.").

Finally, the Court appreciates Petitioner seeking leave to file his second amended complaint, but the motion to do so is unnecessary. Rule 15(a) of the Federal Rules of Civil Procedure states:

> (1) ***Amending as a Matter of Course.*** A party may amend its pleading once as a matter of course no later than:
>
> > (A) 21 days after serving it, or
> >
> > (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) ***Other Amendments.*** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

In this case, Plaintiff has not yet amended his complaint "as a matter of course"; he filed the first amended complaint at the Court's direction. (*See* Doc. 4.) Moreover, the currently

operative first amended complaint has not yet been served. Accordingly, under Rule 15(a)(1), Plaintiff does not need the Court's leave to file a second amended complaint. The Court will therefore deny the motion as moot and direct the Clerk to file the proposed second amended complaint, now at Doc. 21-1, as the second amended complaint.

## III.    The Second Amended Complaint

In the second amended complaint (SAC), Plaintiff names as Defendants: Kansas Secretary of Corrections Jeff Zmuda; A. Johnson, a Unit Team Manager at El Dorado Correctional Facility (EDCF); EDCF Warden Tommy Williams; and Maria Bos, Deputy Warden of Support service at EDCF. (Doc. 20-1, p. 1-3.) In the space on the complaint form for stating the background of the case, Plaintiff writes "See Attachment." *Id.* at 2. But the second amended complaint was submitted without substantive attachments; the only addition to the form complaint is a page identifying Defendant Bos as a defendant to this action. *See id.* at 3.

As Count I, Plaintiff alleges that Defendant Johnson failed to protect him from assault by a "MAX inmate." *Id.* at 4. As supporting facts, Plaintiff asserts that he was maliciously attacked and harmed when this other inmate assaulted Plaintiff in April 2022. *Id.* Plaintiff further asserts that Defendant Johnson knew that the inmate who attacked Plaintiff had a history of violence against other inmates but Defendant Johnson did not move Plaintiff to a safer housing location until the month after the attack. *Id.* As Count II, Plaintiff alleges that his due process rights were violated, that Defendants showed deliberate indifference, and that Defendants retaliated against Plaintiff for filing grievances by transferring Plaintiff to another facility before his grievances were complete. *Id.* As supporting facts for Count II, Plaintiff alleges that Defendants Johnson, Williams, and Zmuda violated prison policies and procedures as well as their "duty to fulfill the safety or equal protection [of] each inmate." *Id.*

4

As Count III, Plaintiff alleges that he was subjected to cruel and unusual punishment. *Id.* at 5. As supporting facts for Count III, Plaintiff asserts that he was housed from April 15, 2020 to May 17, 2022 with maximum security inmates who were violent and reckless. *Id.* Plaintiff contends that he was assaulted on April 19, 2022, and was then quickly transferred to Norton Correctional Facility the following month. *Id.* As relief, Plaintiff seeks $1,500,000.00 in punitive damages; $1,750,000.00 to compensate him for long-term mental anguish; $2,000,000.00 for "failure to protect"; and $2,500.00 per day from April 15, 2020 until May 17, 2022—the time during which he was held in a maximum security facility despite being classified as a minimum security inmate. *Id.*

### A. Screening Standards

Because Plaintiff is a prisoner and has been granted leave to proceed in forma pauperis, the Court is required by statute to screen the SAC and to dismiss it or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). During this screening, the Court liberally construes the SAC and holds it to "less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the SAC as true. *See Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out [the SAC] or construct a legal theory on plaintiff's behalf." *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988)

5

(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of [his] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted.)

The Court must determine whether Plaintiff has "nudge[d his] claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then Plaintiff has not met his burden. *See Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 570).

### B. Discussion

Although the SAC refers the Court to attachments, no attachments were filed with the SAC. Because the Court is familiar with the pleadings previously filed in this matter (Docs. 1 and 6) and the attachments thereto, the Court is aware of the alleged facts behind Plaintiff's claims. But as the Court has already explained to Plaintiff, he must "submit *one* complete and proper amended complaint." (*See* Doc. 4, p. 5 (emphasis added).) The Court has informed Plaintiff:

> [An] amended complaint will not supplement the original complaint; it will completely replace it. Therefore, any claims or allegations not included in the amended complaint will no longer be before the Court. Plaintiff may not simply refer to an earlier filed pleading; the amended complaint must contain all allegations, claims, and exhibits that Plaintiff intends to pursue in this action, including those to be retained from the documents now before this Court.

*Id.* at 7. When the SAC is considered as a standalone document, it fails state a plausible claim for relief against a named defendant.

The SAC fails to state a plausible claim against Defendant Bos because she is not named in Count I, Count II, or Count III.[1] In an attached page identifying Defendant Bos as a defendant, Plaintiff alleges that Defendant Bos violated KDOC policies and procedures that govern housing of inmates within EDCF and between KDOC facilities, she accepted his "transfer into EDCF without medical needs, programming services, or establishing custody level changes and submitted a transfer request due to EDCF not housing minimum custody residents." (Doc. 20-1, p. 3.) Plaintiff also generally alleges in the SAC that Defendant Bos "failed to protect [Plaintiff] from harm and failed to fulfill her duties." *Id.* But neither Count I, Count II, nor Count III mentions Defendant Bos. *See id.* at 4-5. Because Defendant Bos is not included in the facts alleged to support the specific counts on which Plaintiff seeks relief, Plaintiff has failed to state a plausible claim against Defendant Bos.

Similarly, the SAC fails to allege sufficiently specific facts to support a plausible claim against the remaining Defendants. Count I alleges a failure to protect claim against Defendant Johnson. (Doc. 20-1, p. 4.) The Eighth Amendment requires prison officials "to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of...inmates.'" *Hooks v. Atoki*, 983 F.3d 1193, 1205 (10th Cir. Dec. 29, 2020) (quoting *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (alteration and omission in original) (quoting

---

[1] Plaintiff may have stated additional counts in the attachments that are referred to in the SAC but were not submitted with the SAC. He may have named Defendant Bos in the facts alleged to support one or more of the additional counts. Without the attachments, this Court cannot know. In any event, if Plaintiff wishes to identify more than three Counts in his third amended complaint, he may attach additional pages. He must, however, label the additional counts clearly as Count IV, Count V, and so forth and he must set forth for each additional count the alleged constitutional violation and the facts which support his claim that his rights were violated.

*Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (ellipsis and quotation marks omitted).

A claim of deliberate indifference requires a plaintiff to allege "that an official acted (or failed to act) in an objectively unreasonable manner and with subjective awareness of the risk." *Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020) (noting that "the word deliberate makes a subjective component inherent in the claim"). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

To state a plausible claim for failure to protect, Plaintiff must allege facts that, if true, "establish that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Strain*, 977 F.3d at 990 (citations and alteration omitted). "[A]n official's intent matters not only as to what the official did (or failed to do), but also why the official did it." *Requena*, 893 F.3d at 1204 (citing *Strain*, 977 F.3d at 993). The official's response to the risk is also a consideration. *See id*. at 1205 (citing *Farmer*, 511 U.S. at 844 (explaining that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted")).

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 926 (10th Cir. 2020) (unpublished) (citing *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted);

*Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)). "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id*. (citing *Marbury*, 936 F.3d at 1238). Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id*. (citing *Marbury*, 936 at 1236 (internal quotation marks omitted)).

In the SAC, Plaintiff does not provide supporting facts to show that any Defendant was aware that the other inmate posed a real danger to Plaintiff or that there was a strong likelihood of injury, as opposed to a mere possibility. Even liberally construing the SAC, Plaintiff contends only that Defendant Johnson knew that the other inmate "had a violent history with other inmates" and knew "what he planned to attack." (Doc. 20-1, p. 3.) He has failed to allege sufficient facts to show that any defendant was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference. Thus, Plaintiff will be directed to show good cause why his failure to protect claims should not be dismissed for failure to state a claim. He will also be granted the opportunity to file an amended complaint to set forth additional allegations showing that a defendant possessed enough details about a threat to enable them to conclude that it presented a strong likelihood of injury, not a mere possibility. Plaintiff must allege sufficient facts to show that a defendant was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference.

In Count II, in addition to generally asserting deliberate indifference and a failure to ensure Plaintiff's safety, Plaintiff alleges that Defendants Johnson, Williams, and Zmuda violated his due process rights by violating prison policies and procedures. *Id.* But violations of prison regulations, policies, or procedures do not provide a cause of action under § 1983 unless the prison official's

conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation). As the Tenth Circuit has stated:

> [N]o reasonable jurist could conclude that [a plaintiff's] claim that prison officials deprived him of due process by violating internal prison regulations rises to the level of a due process violation. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison [They are] not designed to confer rights on inmates . . . ." *Sandin v. Conner*, 515 U.S. 472, 481-82, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).

*Brown v. Wyoming Dept. of Corrections*, 234 F. App'x 874, 878 (10th Cir. 2007). Plaintiff's claims based on the violation of prison policies and procedures are subject to dismissal for failure to state a constitutional violation.

Plaintiff also refers in Count II to retaliation, asserting that he was transferred in retaliation for pursuing remedies for his injuries. (Doc. 20-1, p. 3.) But he does not further explain his retaliation claim or identify the facts on which it is based. An "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). The SAC contains only general allegations of retaliation, thus Plaintiff's claim of retaliation is subject to dismissal for failure to allege sufficient facts to state a plausible claim for relief.

As Count III, Plaintiff alleges "Cruel [and] Unusual Punishment injured in a Hostile violent

MAX facility and for mini[m]um custody on lockdown as Mini[m]um custody." (Doc. 20-1, p. 4.) As the supporting facts for Count III, he states: "Housed from 4-15-2020 to 5-17-2022 with max security violent [and] []reckless inmates assaulted on 4-19-2022 then quickly shipped out on 5-17-2022 to Norton." (Doc. 20-1, p. 4.) To the extent that Petitioner intends to assert a claim that housing him—an inmate classified as minimum custody—in a facility designated to house maximum-custody inmates was unconstitutional because it subjected him to danger, it mirrors the claim in Count I and is subject to dismissal for the reasons stated above.

Plaintiff may also intend to claim that the constitutional prohibition against cruel and unusual punishment was violated by housing him in a maximum-custody facility because he is classified as minimum custody. But Plaintiff has no constitutional right to dictate where he is housed, whether it is which facility or which custody classification within a facility. *See Schell v. Evans*, 550 Fed. App'x 553, 557 (10th Cir. 2013) (citing *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976)). Jail and prison officials are entitled to great deference in the internal operation and administration of their facilities. *See Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979). Thus, to the extent that Plaintiff intends to argue—separately and distinctly from his failure-to-protect claim— that housing him at EDCF in and of itself violated his constitutional rights, such claim is subject to dismissal for failure to allege a constitutional violation.

Finally, the Court notes that Plaintiff seeks only money damages as relief in this matter. Plaintiff has not specified whether he sues Defendants in their official capacities or their individual capacities. Any claim for monetary damages against the Defendants in their official capacities is subject to dismissal. "[T]he Eleventh Amendment bars [a plaintiff] from seeking [money damages] from defendants in their official capacities." *Davis v. Bruce*, 129 F. App'x 406, 409 (10th Cir. 2005) (unpublished) (citing *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991)); *see also Brown v. Montoya*,

662 F.3 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer*, 502 U.S. at 27, 30, and stating: "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (finding that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [a]s such, it is no different from a suit against the State itself") (citations omitted).

As for Plaintiff's claims for monetary damages against Defendants in their individual capacities, the Prison Litigation Reform Act (PLRA) provides in part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). This provision of the PLRA "limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001). It applies regardless of the nature of the underlying substantive violation asserted. *Id.* Simply put, without "a prior showing of physical injury or the commission of a sexual act," a prisoner plaintiff may not obtain compensatory damages. *Id.* at 878. Nominal and punitive damages, however, are not barred. *Id.* at 879.

Although Plaintiff alleges in the SAC that he was "harmed" and "injured" by another inmate assaulting him, these are the type of conclusory allegations that are not sufficient to state a plausible claim for relief. Plaintiff does not further explain in the SAC the nature of the harm or the details of his injuries. Thus, in order to sustain a claim for compensatory damages, Plaintiff must allege sufficient facts in the third amended complaint to show a physical injury or the commission of a sexual act. Again, Plaintiff's request for punitive damages is not subject to this requirement.

**IV.    Response and/or Amended Complaint Required**

Plaintiff is required to show good cause why this matter should not be dismissed for the reasons explained above. Plaintiff is also given the opportunity to file a complete and proper third amended complaint upon the court-approved form that cures all the deficiencies discussed herein. To be clear, if Plaintiff chooses to file a third amended complaint, it must be complete in and of itself. It will not be treated as a supplement to any earlier complaint; instead it will completely replace the original complaint, the amended complaint, and the second amended complaint. Therefore, any claims or allegations not included in the third amended complaint will no longer be before the Court. In other words, Plaintiff may not simply refer in the third amended complaint to a previous complaint. The third amended complaint must contain all claims Plaintiff intends to pursue in the action, including those already stated in an earlier complaint, and the third amended complaint must allege sufficient facts to state a plausible claim for relief.

Plaintiff must name each and every defendant in the caption of the third amended complaint and he must again refer to each and every defendant in the body of the amended complaint. In each count of the amended complaint, he must adequately identify the federal constitutional provision or law he believes was violated and he must allege sufficient facts to show that a defendant personally participated in that federal constitutional violation alleged in that Count, including dates, locations, and circumstances. All named defendants must be included in the factual allegations supporting at least one of the Counts asserted.

If Plaintiff fails to timely file a response to this order or a third amended complaint, the Court will proceed on the SAC, which will be dismissed for the reasons stated herein without further prior notice to Plaintiff.

**IT IS THEREFORE ORDERED** that the motion for leave to amend the complaint (Doc. 20) is **denied as moot** because Plaintiff does not need the Court's leave to file the second amended complaint. The Clerk is directed to file the proposed second amended complaint (Doc. 20-1) as the second amended complaint.

**IT IS FURTHER ORDERED** that Plaintiff is granted to and including July 26, 2024, in which to show good cause, in writing, why this matter should not be dismissed for the reasons stated herein. In the alternative, Plaintiff is also granted to and including July 26, 2024, in which to file a complete and proper third amended complaint that cures all the deficiencies discussed herein. If Plaintiff fails to file a response or a third amended complaint in the time allowed, this matter will be dismissed without further prior notice to Plaintiff. The Clerk is directed to send 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED.**

DATED:  This 25th day of June, 2024, at Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge